# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TERENCE J. MORTON, | : |
| | : |
| Plaintiff | CIVIL ACTION NO. 3:15-2351 |
| | : |
| v | |
| | :    (JUDGE MANNION) |
| DOMINICK L. DEROSE, *et al.* | |
| | : |
| Defendants | |

## MEMORANDUM

**I.    Background**

Plaintiff, Terence J. Morton, an inmate confined in the State Correctional Institution, Houtzdale ("SCI-Houtzdale"), Pennsylvania, filed the above captioned civil rights action pursuant to 42 U.S.C. §1983. (Doc. 1). Morton challenges the medical care he received as an inmate at his former place of confinement, the Dauphin County Prison. The named Defendants are Enos Martin, M.D. and Warden Dominick DeRose. Id. Plaintiff's allegations of fact are taken from Plaintiff's complaint (Doc. 1 ) and Plaintiff's medical records submitted in support of his complaint. (Doc. 52).

On November 12, 2013, Plaintiff requested on intake to be seen for a mental health evaluation, stating that "he was diagnosed by juvenile probation with Bipolar Disorder and ADHD and never treated." (Doc. 52 at 23). Plaintiff

denied any suicidal thoughts. Id.

Plaintiff alleges that in December, 2013, he saw Defendant, Dr. Enos, for bipolar disorder, sleeping problems and anxiety problems. (Doc. 1 at 2). Dr. Martin prescribed him the following medications "Imipramine 25 mg, Risperdal 2mg and Sinequan 75mg." Id. Plaintiff states that "this medication began on 12-11-13 until the Defendant reorder them on 3-31-14, the Plaintiff took the medication until he was transferred to SCI-Camphill on 4-8-14." Id.

In January, 2014, Plaintiff informed Dauphin County Prison's Medical Department, along with Defendant, Dr. Martin, via request slip that the "the medication 'Risperdal' started causing serious medical complications and abnormal defects, such as chest bleeding and Plaintiff's body started to grow female breast." Id. Plaintiff also contacted his family about the serious harm the drug was causing. Id.

In March, 2014, Plaintiff experienced sensitivity in his chest and bleeding of the chest. Id. He states that he "contacted a nurse, 'Jane Doe' at the pm pill line about it" and she "advised him that it's temperaly (sic) and that the plaintiff is growing and not to worry about it." Id. On March 31, 2014, Plaintiff was seen by Dr. Martin at a sick call appointment. (Doc. 52 at 22). There is no indication that Plaintiff complained to Dr. Martin about any

concerns of Risperdal's side effects. Id.

Although Plaintiff claims that Defendant, Dr. Martin "deliberately forced the Plaintiff to continue to take the 'Riperdal' medication until the Plaintiff got transferred to a state institution on April 8, 2014," (Doc. 1 at 3), Plaintiff's medical record indicates that he was seen by Dr. Martin on April 2, 2014, and was "doing well, complains of not sleeping beyond breakfast." (Doc. 52 at 24). At this visit, it was noted that "Imipramine has been removed from formulary; need formulary change or substitute med." Id. There are no recorded complaints by Plaintiff to Dr. Martin regarding the taking of Risperdal. Id.

Plaintiff claims that he was "bullied, emotionally and mental abuse by fellow inmates and Correctional Officer at Dauphin County Prison" and that the "bullying forced [him] to stay in his cell and the only time [he] exited the cell was to get a shower and a phone call." (Doc. 1 at 3). When in the shower, he states that he "was forced to cover his chest with one arm so he would not get made fun of" because "fellow inmates and Correctional Officer would scream at the Plaintiff telling him he needs a bra and several inmates made a paper bra and hung it in the Plaintiff's cell." Id. Plaintiff claims he "went through depression, mood swings." Id.

On May 24, 2014, while housed at SCI-Camp Hill, Plaintiff began to

"experience more abnormal amount of growth in his chest so much that stress marks began to form on his chest and inner arms." Id. Although Plaintiff "put in a sick call slip to SCI-Camp Hill's medical department, he was never seen because he was transferred to SCI-Houtzdale on May 28, 2014." Id.

On May 30, 2014, Plaintiff was notified by a family member that Risperdal has "harmful side effects towards boys and men", which "included growth in chest bleeding of the breast and mood swings." Id.

On July 18, 2014, Plaintiff "discontinued the medication due to the harm that the medication caused him." Id.

In December, 2014, Plaintiff filed a grievance on the medical department and Dr. Martin. Id. He claims that he "never received a response from the grievance coordinator" because he was transferred back to SCI-Camp Hill on December 24, 2014. Id.

On April 28, 2015, Plaintiff, having never received a response from the first grievance, filed a second one. Id.

On December 4, 2015, Plaintiff filed the instant action in which he seeks compensatory and punitive damages for Defendants' "deliberate indifference to medical needs, medical malpractice, slight negligence, emotional distress, mental anguish and pain and suffering under the Eighth Amendment." Id.

Currently pending before the Court are Defendants' motions to dismiss Plaintiff's complaint, filed on behalf of Defendants, Dr. Martin and Warden DeRose. (Docs. 31, 33). The motions are fully briefed and are ripe for disposition. For the following reasons, the Court will grant the motions.

## II.     Motion to Dismiss

Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft

v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, and a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Id. (quoted case omitted). Thus, "a judicial conspiracy claim must include at least a discernible factual basis to survive a Rule 12(b)(6) dismissal." Capogrosso v. The Supreme Court of New Jersey, 588 F.3d 180, 184 (3d Cir. 2009) (per curiam).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief". Id. at 211 (quoted case omitted).

In addition, because Plaintiff complains about "prison conditions," the screening provisions of 42 U.S.C. §1997e apply, as do the screening provisions of 28 U.S.C. §1915(e), given that he was granted *in forma pauperis* status to pursue this suit. The court's obligation to dismiss a complaint under the PLRA screening provisions for complaints that fail to state a claim is not excused even after defendants have filed a motion to dismiss. See, e.g.,

Lopez v. Smith, 203 F.3d 1122, 1126 n. 6 (9th Cir. 2000). Hence, if there is a ground for dismissal which was not relied upon by a defendant in a motion to dismiss, the court may nonetheless *sua sponte* rest its dismissal upon such ground pursuant to the screening provisions of the PLRA. See Lopez; Dare v. U.S., Civil No. 06-115E, 2007 WL 1811198, at *4 (W.D. Pa. June 21, 2007), aff'd, 264 Fed App'x. 183 (3d Cir. 2008).

### III. Discussion

#### A. Eighth Amendment Medical Claim

In order to establish an Eighth Amendment medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). See also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate

medical care, the medical need is of the serious nature contemplated by the eighth amendment." Id.

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment..." Estelle v. Gamble, 429 U.S. 97, 106 (1976). For instance, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." Id., 429 U.S. at 107. "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990). Further, a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. See White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). In sum, negligence, unsuccessful medical treatment, or medical malpractice

does not give rise to a §1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).

Further, a prison administrator cannot be found deliberately indifferent under the Eighth Amendment because he or she fails to respond to the medical complaints of an inmate being treated by a prison physician, or because, as non-physicians, they defer to the medical judgment of the inmate's treating physicians. Id., 991 F.2d at 69. If, however, non-medical prison personnel had "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner," liability may be imposed. Spruill, 372 F.3d 236.

A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988). See McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart v. Villar, 547 F.2d 112, 113 (10th Cir. 1976).

Additionally, if there is a dispute over the adequacy of the received treatment, courts have consistently been reluctant to second guess the medical judgment of the attending physician. Little v. Lycoming County, 912

F. Supp. 809, 815 (M.D. Pa.), aff'd, 101 F.3d 691 (3d Cir. 1996). The key question is whether the defendant has provided the plaintiff with some type of treatment, regardless of whether it is what the plaintiff desires. Farmer v. Carlson, 685 F. Supp. at 1339.

By Plaintiff's own account, he received medical treatment and medication at Dauphin County Prison. To the extent that Plaintiff is dissatisfied with the purported side effect of the medication, i.e., bleeding, breast growth and mood swings, such allegations, at best, demonstrate Plaintiff's disagreement with medical treatment. Though he may have preferred a different medication, such disagreement is not enough to state a §1983 claim. Spruill, 372 F.3d 235, (holding that "[m]ere disagreement as to the proper medical treatment is" insufficient to state a constitutional violation); Gause v. Diguglielmo, 339 Fed.Appx. 132, 136 (3d Cir. 2009) (a dispute over the choice of medication does not rise to the level of an Eighth Amendment violation). This is particularly true in light of the fact that there are no allegations in the amended complaint that defendant Dr. Martin intentionally withheld medical treatment from Plaintiff in order to inflict pain or harm upon him. See Farmer, 685 F.Supp. at 1339; Rouse, 182 F.3d at 197.

The allegations in Plaintiff's complaint amount to nothing more than his

subjective disagreement with the treatment decisions and medical judgment of the medical staff at the prison. White, 897 F.2d. at 103, (observing that "a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference"). Claims of medical malpractice and disagreements as to the proper course of medical treatment simply do not suffice to satisfy the deliberate indifference standard. See Monmouth Cnty., 834 F.2d at 346. Courts will not second guess whether a particular course of treatment is adequate or proper. See Parham v. Johnson, 126 F.3d 454, 458 n.7 (3d Cir. 1997); (quoting Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979)). Based on the foregoing, Plaintiff's complaint fails to articulate a plausible civil rights claim against defendant Dr. Martin.

### B. Personal Involvement

It is well established that personal liability in a civil rights action cannot be imposed upon a state official based on a theory of *respondeat superior*. See, e.g., Rizzo v. Goode, 423 U.S. 362 (1976). It is also well-settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a civil rights case and that a complaint must allege such personal involvement. Sutton v. Rasheed, 323 F.3d 236, 249–250 (3d Cir. 2003). Each named defendant must be shown, through the

complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. Id. As the Court stated in Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs.... [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

Aside from naming Warden DeRose in the caption of the complaint, there are no allegations in the body of the complaint against this Defendant. There is no evidence of record that this Defendant was personally involved in any of the alleged incidents of constitutional deprivation. Thus, it is apparent that Plaintiff is attempting to impose liability on Warden DeRose on the basis of *respondeat superior*. As such, Defendant, Warden DeRose is entitled to dismissal.[1]

---

[1] With respect to Plaintiff's allegation that "Correctional Officer would scream at the Plaintiff telling him he needs a bra," it is well settled that mere words spoken to a prisoner by a correctional officer, even when those words are harsh, do not amount to a violation of the prisoner's civil rights by the officer. Johnson v. Glick, 481 F.2d 1028, 1033 n. 7 (2d Cir.1973); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir.1979) (verbal harassment by threatening to hang an inmate is not sufficient to state a constitutional deprivation). "Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws." DeWalt v. Carter, 224 F.3d 607, 612

## IV. Leave to Amend

Before dismissing a complaint for failure to state a claim upon which relief may be granted, the Court must grant the Plaintiff leave to amend his complaint unless amendment would be inequitable or futile. See Grayson v. Mayview State Hospital, 293 F.3d 103, 114 (3rd Cir. 2002). Since it is clear from Plaintiff's complaint that Plaintiff received adequate medical treatment throughout his incarceration at the Dauphin County Prison, and merely disagrees with the treatment he received during this time, the Court finds that amendment on these claims would be futile.

## V. Conclusion

For the reasons stated above, the motions to dismiss, filed on behalf of Defendants, Dr. Enos Martin and Warde Dominick DeRose, will be granted. An appropriate order shall issue.

*s/Malachy E. Mannion*
**MALACHY E. MANNION
United States District Judge**

**Dated: September 29, 2017**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2015 MEMORANDA\15-2351-01.wpd

---

(7th Cir. 2000). Accordingly, any claim of verbal assault fails to state a cognizable claim.